UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
**GREGORY CANNON,**                          )
                                                    )
      **Plaintiff**                              )
                                                    )
      **v.**                                       )  **Civil Action No. 12-10512-DJC**
                                                    )
**AETNA LIFE INSURANCE COMPANY,**   )
**et al.,**                                       )
                                                    )
      **Defendants.**                         )
_____)

<u>**MEMORANDUM AND ORDER**</u>

**CASPER, J.**                                                    **September 17, 2013**

## I.    Introduction

Plaintiff Gregory Cannon ("Cannon") brings this action against the PharMerica Temporary Disability Income Plan (the "Plan") and the Plan's claims fiduciary, Aetna Life Insurance Company ("Aetna") (collectively, the "Defendants"), under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132 <u>et seq.</u>, alleging that the Defendants improperly denied Cannon short-term disability benefits.  Cannon and the Defendants have each moved for summary judgment.  For the reasons set forth below, Cannon's motion is ALLOWED in part to the extent that the Court remands this matter to Aetna in accordance with this Memorandum and Order and the Defendants' motion for summary judgment is DENIED.

## II.    Factual and Procedural Background

### A.    <u>The Plan</u>

PharMerica Corp. ("PharMerica") employed Cannon as a pharmacist at a Massachusetts

hospital. D. 22[1] at CF 1366, 1551; D. 37 at 1.  As a PharMerica employee, Cannon participated

in the Plan, an ERISA-governed employee welfare benefits plan administered by PharMerica.

See D. 37 at 4-6; D. 41 at 1.  Aetna funded the Plan through a Group Accident and Health

Insurance policy (the "Policy") issued to PharMerica and acted as the claims fiduciary with

respect to benefit claim determinations.  See D. 22 at Policy 55.  The Policy expressly grants

Aetna "complete authority to review all denied claims for benefits" and Aetna retains

"discretionary authority to:  determine whether and to what extent employees and beneficiaries

are entitled to benefits; and construe any disputed or doubtful terms" of the Policy.  D. 22 at

Policy 78.

The Plan defines disability as an individual's inability "solely because of disease or

injury, to perform the material duties[2] of [his] own occupation."[3]  D. 34 at TDI BKLT 4.  The

Plan further specifies that an individual "will not be deemed to be performing the material duties

of [his] own occupation if:  [he is] performing some of the material duties of [his] own

occupation; and solely due to disease or injury, [his] income is 80% or less of [his] predisability

earnings."  Id.

---

[1] D. 22 is the Amended Notice of the filing of the Administrative Record and attaches the administrative record (filed under seal); see D. 34.

[2] Under the Plan, material duties are those duties that "are normally required for the performance of [an individual's] own occupation; and cannot be reasonably omitted or modified." D. 34 at TDI BKLT 15.  "However, to be at work in excess of 40 hours per week is not a material duty." Id.

[3] Under the Plan, occupation is "the occupation that [an individual is] routinely performing when [the] period of disability begins" and is viewed "as it is normally performed in the national economy instead of how it is performed:  for [an individual's] specific employer; or at [an individual's] location or work site; and without regard to [the individual's] specific reporting relationship." D. 34 at TDI BKLT 15.

B.      **Cannon's Medical History in August and September 2010**

On August 3, 2010, Dr. Sam Donta, an infectious disease specialist, examined Cannon, who was seeking medical treatment for exhaustion, pain, occasional swelling in his knees, headaches, dizzy spells, sweats, chills, muscle cramps, occasional burning or itching on parts of his body and nonspecific rashes over his upper chest.  D. 22 at CF 1481.  Dr. Donta's examination notes indicated that Cannon was not in acute distress.[4]  D. 22 at CF 1482.  In the course of the examination, Cannon reported that although prior tests for lyme disease had been inconclusive, he previously had received treatment for the disease. D. 22 at CF 1481.  Following the examination, Dr. Donta opined that Cannon "probably does have chronic [l]yme disease accounting for some, if not all, of his symptoms."  D. 22 at CF 1482.  Based on the probable diagnosis, Dr. Donta recommended additional testing and prescribed Biaxin and Plaquenil.  Id.

On August 25, 2010, Cannon arrived at South Shore Hospital's emergency room, complaining of severe nausea and vomiting.  D. 22 at CF 1381.  Cannon's physicians concluded that Cannon's symptoms were secondary to the use of Plaquenil.  Id.  While at the emergency room, Cannon was "aggressively hydrated" and "advised to discontinue Plaquenil or at least discuss with [Dr. Donta] prior to resum[ing] his medication."  D. 22 at CF 1381.  Cannon was discharged on August 26, 2010 and reported feeling better at the time of discharge.  Id.  However, within two weeks Cannon returned to the emergency room, complaining of nausea, vomiting and rectal bleeding.  D. 22 at CF 1393.  The treating physician noted that Cannon had restarted Plaquenil on the recommendation of Dr. Donta and the nausea and vomiting had

---

[4] Dr. Donta did note the following observed irregularities: fine tremor in both hands, the misspelling of one word when spelling backwards, failure to remember one President and two errors on serial three subtractions.  D. 22 at CF 1482.

developed shortly thereafter.  Id.  Cannon was admitted for further testing and the Plaquenil was discontinued at the recommendation of the treating physician.  D. 22 at CF 1395.

### C.   **Cannon's Claim for Benefits**

On August 26, 2010, Cannon filed a claim with Aetna for short-term disability benefits. D. 22 at CF 1611.  Dr. Donta subsequently completed paperwork stating that Cannon required a six to twelve month leave of absence from work due to daily nausea and vomiting.  D. 22 at CF 1095, 1097.  Aetna found that Cannon became disabled on August 18, 2010 and approved Cannon's claim for benefits from August 25, 2010 to October 3, 2010, based on the probable diagnosis of lyme disease, but requested a peer review of Cannon's claim.  D. 22 at CF 1570–71.

#### 1.   *Dr. Clark's Report*

At Aetna's request, Dr. Rodger Clark, a board-certified physician specializing in infectious disease, reviewed Cannon's medical file.  D. 22 at CF 1365–68.  As part of his review, Dr. Clark conferred with Dr. Donta.  D. 22 at CF 1367.  Dr. Clark noted the following in his September 30, 2010 report:

> Dr. Donta does state that they discussed a fall Mr. Cannon sustained while at work, from a ladder resulting in a concussion.  It is unclear if this timing was around the time of the MRI of the brain.  His symptoms were described as exhaustion and "all over body pains."  He states that cognitively Mr. Cannon seemed to be well.  Mr. Cannon also described himself as cognitively intact.  On Dr. Donta's informal mini-mental status exam, however, he performed less than perfectly.  His physical exam was otherwise normal except for a fine motor tremor in both hands and a soft diastolic murmur.  He states that he decided to begin a trial of clarithromycin and hydroxychloroquine and that shortly afterward the claimant developed nausea, vomiting, and diarrhea.  He states that he was informed that alcoholism was a possible etiology of this. . . . Dr. Donta states that at this current time all antibiotics are held.

Id.  While conferring with Dr. Clark, Dr. Donta stated that "objectively he was unable to verify any functional impairments" and "he did not have any objective findings that would support [a] disability claim for the claimant's own occupation."  Id.  Based on Dr. Clark's review of the

medical records and the consultation with Dr. Donta, Dr. Clark concluded that the evidence "fail[ed] to support functional impairment for the entire time frame."  D. 22 at CF 1366.

### D.  Aetna's Determination

On October 6, 2010, Aetna notified Cannon that he no longer met the definition of disability and as a result, he no longer would be eligible for short-term disability benefits.  D. 22 at CF 1651.  Aetna's letter advising Cannon of its decision summarized Cannon's claim file, including Dr. Clark's consultation with Dr. Donta, and provided a definition of disability:

> You are disabled from your own occupation if, as a result of physical disease, injury, pregnancy or mental disorder:  1) You are unable to perform with reasonable continuity the material duties of your own occupation; and 2) You suffer a loss of at least 20% in your predisability earnings when working in your own occupation.

Id.  Aetna informed Cannon that on the basis of Dr. Clark's review and the underlying medical documentation, it had determined that "there [was] no evidence of a functional impairment which would substantiate an inability to perform [Cannon's] occupation starting from October 4, 2010."  Id.  Aetna advised Cannon of his right to appeal its decision.  Id.

### E.  Cannon's Health in December 2010

On December 17, 2010, Cannon went to the emergency room complaining of chest pain, "palpitations and dyspnea on exertion."  D. 22 at CF 1334.  An initial EKG showed atrial fibrillation, which was treated with Diltiazem.  D. 22 at CF 1335.  Cannon was admitted and repeat studies showed that "[h]e . . . remained in a sinus rhythm [after] admission."  D. 22 at CF 1336, 1353.  Dr. Seth McClennen, a cardiologist, evaluated Cannon after which it was determined that Cannon had "a preserved ejection fraction, structurally normal heart, and an episode of paroxysmal atrial fibrillation."  D. 22 at CF 1348–49.  A MRI showed "no new findings/abnormalities."  D. 22 at CF 1351.  Cannon's admission note mentioned that Cannon

"had 11 months of nausea and vomiting."  D. 22 at CF 1334.  A gastric emptying study was conducted and "showed delayed emptying, consistent with gastroparesis" for which Reglan was prescribed.  D. 22 at CF 1351.  Cannon was discharged on December 20, 2010, with instructions to "[g]radual[ly] [r]eturn to [n]ormal [a]ctivity ([n]o driving (as prior))."  D. 22 at CF 1350, 1352.

F.    **Cannon's Appeal**

On January 6, 2011, Cannon appealed Aetna's decision to terminate his benefits.  D. 22 at CF 1330.  Cannon asserted that he was experiencing continuing symptoms of exhaustion, pain, weight loss, nausea, vomiting, syncope and frequent loss of balance.  Id.  As part of his appeal, Cannon submitted additional medical records, including records of his hospitalization in December 2010.  D. 22 at CF 1331.  In the course of its review of the appeal, Aetna had Dr. Wendy Weinstein, an independent physician specializing in internal medicine, review Cannon's entire file and issue a report.  D. 22 at CF 1321.

1.    *Dr. Weinstein's Report*

Dr. Weinstein issued a report on February 7, 2011.  D. 22 at CF 1321–27.  In the course of preparing her report, Dr. Weinstein reviewed Cannon's medical records and conducted peer consultations with Dr. McClennen and Dr. Donta.  D. 22 at CF 1321-22, 1324–25.  Dr. Weinstein noted Dr. McClennen's recommendation that "the claimant would only be seen on an every six-month basis for routine follow up of paroxysmal atrial fibrillation and there was no indication of the need for additional evaluation and treatment at the current time."  D. 22 at CF 1325.  Dr. Weinstein also noted Dr. McClennen's opinion that Cannon's symptoms did not correlate with arrhythmias and that Cannon had "normal ejection fraction and [a] structurally normal heart."  Id.  During the peer-to-peer consultation, Dr. Donta noted that Cannon was last

6

seen on November 16, 2010, that "[Cannon] may have some limitation in work based on his general overall condition but . . . the Lyme serologies were negative and this was not the etiology for [Cannon's] complaints" and that "the MRI findings [could] possibly be consistent with multiple sclerosis versus Lyme [Disease]."  D. 22 at CF 1325.  The reviewing doctor also noted that Dr. Donta recommended that Cannon return to his primary care physician, Dr. Chiang, and suggested a possible neurological evaluation.  Id.  Dr. Weinstein stated that "it does not appear that Dr. Donta [is] continuing to recommend restrictions and limitations" on Cannon's ability to work.  D. 22 at CF 1326.

On the basis of the peer consultations and her review of the medical records, Dr. Weinstein concluded that the medical evidence gave "no indication that the claimant would be unable to perform any physical demand level of work including his own medium occupation during the timeframe in question other than the dates of hospitalization from 12/17/10 through 12/20/10."  Id.  In support of this conclusion, Dr. Weinstein explained:

> The presented clinical information references the claimant having multiple subjective complaints but the records do not document specific physical examination abnormalities that would support functional impairment from the claimant's medium occupation as a pharmacist from 10/4/10 through 1/26/11 other than the referenced hospitalization from 12/17/10 through 12/20/10.  The claimant noted exhaustion, musculoskeletal pain, nausea, vomiting and weight loss as well as vertigo and dizziness.  However, the presented records have not documented specific musculoskeletal or neurologic examination abnormalities that would support functional impairment from his medium occupation.

D. 22 at CF 1325.  Dr. Weinstein also noted that Cannon had "two hospitalizations secondary to nausea and vomiting that were presumably related to the Plaquenil" and that "Plaquenil was discontinued."  D. 22 at CF 1326.  She reviewed the other medications Cannon had been treated with, and concluded that "[t]here is no documentation of adverse effects from these medications."  D. 22 at CF 1326–27.

7

### G.    Aetna Partially Overturns its Previous Determination

On February 18, 2011, Aetna informed Cannon that it had completed its review of his appeal and stated that "the original decision to terminate TDI benefits, effective 10/4/10, has been partially overturned."  D. 22 at CF 1657.   Aetna's letter informing Cannon of its decision recounted the steps Aetna had taken in reviewing Cannon's claim and explained:

> Based upon our review of the submitted documentation, and the rationale detailed herein, we have determined that there was a lack of medical evidence (i.e.; neurologic evaluation for the entire time frame, progress notes from your primary care physician, etc.) to support your disability, as of 10/4/10 through 12/16/10 and 12/21/10 onward.  However, there is sufficient medical evidence to support your inability to perform the material duties of your occupation from 12/17/10 through 12/20/10, due to your hospitalization during these days.

D. 22 at CF 1658.  The letter informed Cannon of the medical documents reviewed on appeal. D. 22 at CF 1657.   This medical documentation included physician notes from Cannon's hospitalizations, imaging reports and Dr. Donta's August 2010 Attending Physician Statement, but no records from Dr. Chiang.  Id.  The letter noted Dr. McClennen's opinion that Cannon had "a structurally normal heart" and that Cannon would need to be seen "on an every six month[] basis."  D. 22 at CF 1658.  The letter also referenced Dr. Donta's opinion that Cannon's "MRI findings . . . were thought to be possibly consistent with multiple sclerosis versus Lyme Disease."  Id.  Accordingly, Aetna partially upheld its initial determination, with the exception of granting benefits from December 17, 2010 through December 20, 2010.  See id.  Aetna advised Cannon that its review was final and that if Cannon disagreed with the claim determination he had the right to take legal action under ERISA.  Id.

### H.    Cannon Seeks Judicial Review

On March 21, 2012, Cannon filed the instant complaint, alleging that he is entitled to short-term and long-term disability benefits.  Compl., D. 1 ¶ 2.

On February 18, 2013, the parties jointly stipulated to dismiss without prejudice the PharMerica Long Term Disability Plan and Cannon's claim for long-term disability benefits. D. 35. On February 26, 2013, Cannon and Defendants cross-moved for summary judgment. D. 36, 39. Cannon argues that Defendants' decision to terminate benefits was "procedurally and substantively unsound and accordingly an abuse of . . . discretion under ERISA." Pl. Mem., D. 40 at 1. Defendants maintain that Aetna's decision as claims fiduciary was not arbitrary and capricious. Def. Mot., D. 36 at 2. On July 19, 2013, the Court heard argument on the cross-motions and took the matter under advisement. D. 51.

## III.   Discussion

### A.   Standard of Review

When an ERISA plan grants its plan administrator (or claims fiduciary) discretionary authority to determine eligibility for benefits or construe the terms of the plan at issue, judicial review of a claims determination under 29 U.S.C. § 1132(a)(1)(B) is conducted under the arbitrary and capricious/abuse of discretion standard. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 107, 115 (1989); Denmark v. Liberty Life Assurance Co. of Boston, 566 F.3d 1, 9 (1st Cir. 2009). This standard of review is deferential; that is, "the administrator's decision must be upheld if it is reasoned and supported by substantial evidence." Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004) (citation omitted). "Evidence is substantial if it is reasonably sufficient to support a conclusion, and the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary." Id. A reviewing court must decide only whether the administrator's denial of benefits was irrational, with any doubts tending to be resolved in favor of the administrator. Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 24 (1st Cir. 2003).

Here, the Policy grants Aetna "complete authority to review all denied claims for benefits," and Aetna retains "discretionary authority to determine whether and to what extent employees and beneficiaries are entitled to benefits." D. 22 at Policy 78. Cannon concedes that the arbitrary and capricious standard applies in this case. D. 40 at 5–6. Accordingly, the Court will review Aetna's decision with respect to Cannon's claim using this deferential standard of review.

One factor in the analysis of whether a decision is arbitrary and capricious is whether a structural conflict of interest exists. Where an ERISA plan administrator "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket . . . this dual role creates a conflict of interest." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008). Where such a conflict exists, "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits." Id.

Here, Aetna determines whether claims for short-term disability benefits satisfy the terms of the Plan and Policy and also is liable for benefits payable under the Plan. Ans., D. 7 ¶¶ 6, 7; D. 22 at Policy 78. Therefore, a structural conflict of interest exists. However, a decision to award at least some benefits rather than deny benefits entirely "manifest[s] an approach demonstrating an unbiased interest that favor[s the claim applicant], making the conflict factor 'less important (perhaps to the vanishing point).'" See Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 362 (4th Cir. 2008) (quoting Glenn, 554 U.S. at 117). Here, Aetna initially approved Cannon's claim and accorded him benefits from August 25, 2010 through October 3, 2010. D. 22 at CF 1570–71. Further, Aetna preserved the integrity of its claims-determination process by referring Cannon's appeals to two independent physicians for review. D. 22 at CF 1321, 1365. Cannon does not argue that Aetna's decision to limit his benefits was an "actual

conflict," i.e., as the First Circuit has stated, an "instance[] in which the fiduciary's decision was in fact motivated by a conflicting interest." Denmark, 566 F.3d at 5 n.2; see D. 40 at 1–2. A mere structural conflict "will act as a tiebreaker" if the relevant considerations are "closely balanced." Denmark, 566 F.3d at 9 (quoting Glenn, 554 U.S. at 117). However, in the absence of any suggestion that Aetna's decision here regarding Cannon's benefits was actually motivated by a conflicting interest, Aetna's granting of some benefits initially and increasing the scope of those benefits on appeal, and in light of the further discussion of Cannon's other contentions below, the Court has not accorded Aetna's structural conflict significant or dispositive weight in the review of the Aetna's exercise of its discretion.

### B.   Analysis

Defendants argue that Aetna reached its final decision to deny short-term disability benefits due to a lack of medical evidence supporting Cannon's claim of disability and therefore they were not arbitrary and capricious in denying Cannon's claim. Cannon argues that Aetna's determination was arbitrary and capricious. He points to both substantive and procedural violations in Aetna's review process, and argues that as a result, Aetna's decision was an abuse of discretion. The Court addresses each of Cannon's arguments in turn.

#### 1.   *Substantive Violations*

Cannon argues that Aetna's decision to terminate Cannon's short-term disability benefits was substantively flawed and accordingly, an abuse of discretion under ERISA. Specifically, Cannon claims that Aetna erred by: (a) ignoring evidence presented in the medical records of Cannon's inability to perform the material duties of his occupation; (b) failing to follow the recommendation of its own reviewing physician to obtain and review additional medical records;

(c) failing to respond to Cannon's request for his claim file; and (d) deciding to pay only four additional days of benefits in December 2010.

a)   Failure to Evaluate Medical Records

Cannon claims that Aetna arbitrarily dismissed reliable evidence of his disability put forth by his treatment providers and in doing so, abused its discretion. D. 40 at 7. In support of this argument, Cannon points to the October 6, 2010 denial letter and alleges that Aetna abused its discretion by failing therein to acknowledge a documented fine motor tremor, the complaint of falls and ongoing nausea and dizziness, as well as his treatment providers' opinions regarding the impact of those symptoms on Cannon's ability to work.[5] D. 40 at 7–8. Cannon also argues that Aetna erred in its final decision letter of February 18, 2011 by failing to consider the opinion of his treating physician, Dr. Donta.[6] D. 40 at 8.

To the extent that Cannon relies on Dr. Donta's opinion to question Aetna's decision, the "treating physician rule" — affording special deference to a treating physician's opinion in social security appeal cases — does not apply to ERISA cases. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) (holding that "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician"); Richards v.

---

[5] On July 15, 2013, Cannon filed a notice of supplemental authority to bring Petrone v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson and Affiliated Cos., No. 11-10720-DPW, 2013 WL 1282315 (D. Mass March 27, 2013), to the attention of the Court. D. 48. The Court finds Petrone to be distinguishable, due to the fact that in Petrone, six of the twelve medical professionals that evaluated the plaintiff found her to be "totally disabled and unable to work in any job." Petrone, 2013 WL 1282315, at *2. In Petrone, the court found that the plan administrator's final determination letter failed to address meaningfully the multiple reports finding complete limitation of functional capacity, whereas in this case, there were no such competing reports.

[6] Dr. Donta noted during the peer consultation with Dr. Weinstein that Cannon "has multiple subjective complaints with dizziness and some instability and . . . may have some limitation in work based on his general overall condition," but did not reference any objective evidence in the medical record to substantiate his opinion. D. 22 at CF 1325.

Hewlett-Packard Corp., 592 F.3d 232, 240 & n.9 (1st Cir. 2010) (noting that in ERISA cases, "the opinion of the claimant's treating physician . . . is not entitled to special deference" as they are in Social Security disability proceedings (quoting Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 526 (1st Cir. 2005) (citation omitted)) (internal quotation marks omitted)).

Cannon additionally points to some evidence in the record contradicting Aetna's decision. Pl. Opp., D. 43 at 5–6. Specifically, Cannon alleges that Aetna ignored evidence that: (1) "even when Mr. Cannon stopped all medications, his disabling nausea and vomiting continued along with his chronic dizziness," D. 22 at CF 1337; (2) "Dr. Blachman in the neurology outpatient clinic . . . had diagnosed him with syncope," D. 22 at CF 1332, 1345; (3) upon discharge from the hospital in December 2010, a doctor noted that he "has had several falls and it is unclear if he actually syncopized," "[t]here are no witnesses" and "[i]t does sound potentially arrhythmic as he has no warning symptoms and falls straight forward, including lacerations to his head," D. 22 at CF 1353; and (4) a neurological examination in December 2010 revealed that Cannon had a "slight positional tremor" and "[o]n coordination testing, there is slight past-pointing on finger-nose-finger testing, left more than right," D. 22 at CF 1346. However, it was Aetna's responsibility to weigh conflicting evidence when making its determination. Vlass v. Raytheon Emps. Disability Trust, 244 F.3d 27, 32 (1st Cir. 2001). "[T]he mere existence of contradictory evidence does not render a plan fiduciary's determination arbitrary and capricious." Leahy v. Raytheon Co., 315 F.3d 11, 19 (1st Cir. 2002).[7] Moreover, the "relevant issue is not whether [Aetna] gave appropriate weight to all relevant evidence in the record, but whether sufficient evidence exists to support [Aetna's] denial." Island View

---

[7] Indeed, the First Circuit has cautioned that "when the medical evidence is sharply conflicted, the deference due to the plan administrator's determination may be especially great." Leahy, 315 F.3d at 19 (citing Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1180 (8th Cir. 2001)).

<u>Residential Treatment Ctr., Inc. v. Blue Cross Blue Shield of Mass., Inc.</u>, No. 07-10581-DPW, 2007 WL 4589335, at *21 (D. Mass. Dec. 28, 2007).

Here, Aetna initially approved short-term disability benefits from August 25, 2010 to October 3, 2010 based on the reported diagnosis of lyme disease, Cannon's emergency room visits and to allow time for a peer review of Cannon's claim.  D. 22 at CF 1570–71.  In conducting its further review of Cannon's claim, Aetna had an independent physician, Dr. Clark, review Cannon's medical records.  D. 22 at CF 1365–68.  Dr. Clark concluded that the medical evidence failed to support a finding that Cannon had any functional impairment.  D. 22 at CF 1366.  Accordingly, Aetna determined that Cannon was not entitled to short-term disability benefits beyond October 3, 2010.  <u>See</u> D. 22 at CF 1651.  Cannon appealed the decision and submitted additional medical records detailing a hospital stay for reported chest pain.  D. 22 at CF 1330–31.  As part of Aetna's appellate review process, another independent physician, Dr. Weinstein, reviewed Cannon's file.  D. 22 at CF 1321–27.  Dr. Weinstein determined that the medical records did not document objective findings that would support an inability for Cannon to perform his occupation as a clinical pharmacist, with the exception of Cannon's hospitalization from December 17, 2010 to December 20, 2010.  D. 22 at CF 1326.

Aetna's decision to give weight to the medical opinions of the two independent reviewing physicians does not render its claim decision arbitrary and capricious, particularly given the opinions of the reviewing physicians based upon the record then available to them.

b)      <u>Failure to Acquire Additional Medical Records</u>

Cannon further argues that Aetna acted arbitrarily by failing to follow what Cannon characterizes as a recommendation by Aetna's independent reviewer, Dr. Weinstein.  D. 40 at 12.  The relevant portion of Dr Weinstein's report states:

5.  (For Core Team Claims ONLY):  If the level of impairment indicated in the medical records you reviewed does not support the claimant's functional inability to perform the duties of his/her job, what type of additional clinical documentation from the treating providers and/or facilities would be helpful for the continued evaluation of this claimant's proclaimed functional impairment?
Additional clinical documentation could include any other progress notes from the timeframe in question.  None of the records from the claimant's primary care provider, Dr. Chiang, have been presented for review and these records would be beneficial.   Dr. Donta indicated the he recommended the claimant have a neurologic evaluation after the claimant was seen on 11/16/10.  The claimant did have a neurologic consultation during his hospitalization on 12/18/10, but any other neurologic evaluations would be relevant for review as well.

D. 22 at CF 1327.

Cannon argues that despite Dr. Weinstein's "clear recommendation that Aetna obtain additional medical records . . . as they would be 'beneficial' to Aetna's review, Aetna did not request the records."  D. 40 at 13.  As a result, Cannon claims that Aetna failed to conduct a full and fair review as required by law.  D. 40 at 15–16.

Although Dr. Weinstein's opinion was not equivocal on the medical record available to her, it also appears that the medical records she reviewed for this opinion were incomplete given her belief that records from Dr. Chiang, Cannon's primary care physician "would be beneficial" and any other neurological evaluations "would be relevant for review as well."   Limited remand to Aetna is appropriate given Dr. Weinstein's recommendation as to the absence of these records, particularly Dr. Chiang's records, and also in light of the fact, as discussed below, that Aetna's failure to give Cannon full access to his claim file did not give him a meaningful opportunity to supplement that file with Dr. Chiang's records during his appeal.  See Downey v. Aetna Life Ins. Co., No. 10-12055-DPW, 2012 WL 787372, at *12 (D. Mass. March 8, 2012) (remanding for the limited purpose of allowing the independent physicians to update their reports after reviewing the EMG/nerve conduction study where the reviewing physician stated that such record "could be utilized to alter current recommendations"); Ferguson v. Hartford Life & Acc. Ins. Co., 268 F.

Supp. 2d 463, 472 (E.D. Penn. 2003) (finding Hartford to have acted arbitrarily and capriciously by failing "to have the testing done before it rendered a decision which ran counter to the professional opinions of Ferguson's treating physicians, one of whom was a specialist in the disorder, and which was required by its own physicians before they could definitively conclude that Ferguson was not disabled").

Accordingly, to ensure that Cannon has been provided a full and fair review of his full medical record, this Court will remand to allow the independent, reviewing physicians, including Dr. Weinstein, to update their reports after the record is supplemented with the additional medical records identified in Dr. Weinstein's February 7, 2011 report, including records from Cannon's primary care physician, Dr. Chiang.

c)      Cannon's Request for the Claim File

Cannon claims that Aetna failed to provide requested documents during the administrative appeal process.  D. 40 at 9–11.  Cannon's requests for information included:  (1) an October 25, 2010 request (after Cannon received the October 6, 2010 denial of his claim) for "documents, transcripts of conversations, and all other pertinent data" relied on for the initial claim determination (i.e., the claim file); and (2) a January 6, 2011 request (when Cannon sought appeal of the denial of his claim) for the credentials of the physicians that reviewed Cannon's claim.  Id. at 9, 10; D. 22 at CF 1330–31, 1362.  Cannon argues that this procedural error calls into question the integrity of Aetna's decision.  D. 40 at 11.

Pursuant to ERISA, every employee benefit plan shall:

afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133 (2).  ERISA's interpretive guidelines specify that a plan's claims procedure fails to provide a reasonable opportunity for a full and fair review if, <u>inter alia</u>, it does not:

> Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

29 C.F.R. 2560.503-1(h)(2)(iii).  This Court shall assume, as the First Circuit has done in similar circumstances, that Cannon was entitled to see his entire claim file, <u>DiGregorio v. Hartford Comprehensive Emp. Benefit Serv. Co.</u>, 423 F.3d 6, 15 (1st Cir. 2005) (assuming, where plaintiff claimed defendant's failure to disclose the complete claim file upon request deprived plaintiff of a full and fair review, that "[the plaintiff] was entitled to see her entire claim file"), and Aetna does not dispute Cannon's claim that he did not receive the file nor does it point to any confirmation in the record that the file requested by Cannon was ever sent to him.  D. 22 at CF 1360 (Aetna employee indicates forwarding Cannon's October 2010 request to another employee to have the claim file copied and sent to him, but indicating no confirmation of same being done); CF 1582 (same).  Even so, Cannon still must demonstrate that he was prejudiced by any failure by Aetna to provide him with the requested documentation.  To show sufficient prejudice, Cannon must demonstrate a connection between Aetna's procedural misstep and his inability to receive a full and fair review of his claim to benefits.  <u>Id.</u> at 16 (requiring plaintiff to demonstrate a connection between claim administrator's failure to disclose complete claim file upon request and plaintiff's inability to receive a full and fair review of the claim to benefits); <u>Recupero v. New England Tel. & Tel. Co.</u>, 118 F.3d 820, 840 (1st Cir. 1997) (holding that the district court properly denied the plaintiff relief when the court determined that the plaintiff had not proffered sufficient evidence to support a finding of prejudice "in any relevant sense").  To show a connection between the procedural error and inability to receive a full and fair review,

Cannon must demonstrate that as a result of Aetna's failure to disclose the requested documentation, Cannon did not understand the evidence that he needed to provide to appeal Aetna's initial determination.  DiGregorio, 423 F.3d at 16.

Cannon argues that Aetna's failure to disclose the claim file pursuant to the October 25, 2010 request was prejudicial because Cannon did not know that the files from Dr. Chiang had not been reviewed in the claim review process.  Given Dr. Weinstein's identification of such documents as being "beneficial" in the review process, this Court cannot conclude that Cannon's lack of access to his claim file, when requested, was not prejudicial.  Given that it is the claimant's burden to provide evidence that showed that he continued to meet the definition of disability, see Wright v. R.R. Donnelley & Sons Co. Grp. Benefits Plan, 402 F.3d 67, 77 (1st Cir. 2005), Cannon certainly could not have done so if he was not on notice that Dr. Chiang's records were not part of the file that was reviewed during Aetna's consideration of his claims.  On October 6, 2010, in Aetna's determination letter, Cannon was advised of the content of Dr. Clark's consultation with Dr. Donta and that Aetna had reviewed all "available medical information," D. 22 at CF 1651, but that information was not defined.  Although Cannon was given the opportunity to submit additional records for appeal and in fact did submit records of his December 2010 hospitalization along with his notice of appeal, D. 22 at CF 1331, it was not a meaningful opportunity here where he was not on notice of the contents of the claims file (and the absence of Dr. Chiang's records) until the termination of his appeal.  Compare D. 22 at CF 1651 with D. 22 at CF 1657.  This failure of access to his claim file was, in these particular circumstances involving Dr. Weinstein's notation about how any records from Dr. Chiang would be beneficial in review of the claim, prejudicial and prompts the limited remand that the Court has addressed above.

d)      Granting Disability Benefits for Four Days

After reviewing the medical documentation Cannon submitted in support of his administrative appeal, Aetna partially reversed its initial denial of short-term disability benefits, stating:

> [T]here is sufficient medical evidence to support your inability to perform the material duties of your occupation from 12/17/10 through 12/20/10, due to your hospitalization during these days.

D. 22 at CF 1658.  Cannon claims that Aetna's decision to grant disability benefits for the four day period in December during which he was hospitalized, but refusing to grant disability benefits for the period prior or subsequent to the hospitalization, was unreasonable and constituted an abuse of discretion.  D. 40 at 16–17.

As discussed above, the Court reviews Aetna's claim determination using the arbitrary and capricious standard of review.  Accordingly, the Court "will uphold [Aetna's] decision to deny disability benefits 'if there is any reasonable basis for it.'"  Medina v. Metro. Life Ins. Co., 588 F.3d 41, 45 (1st Cir. 2009) (quoting Wallace v. Johnson & Johnson, 585 F.3d 11, 14–15 (1st Cir. 2009)).

Prior and subsequent to Cannon's four day hospital stay in December 2010, Cannon's treating physicians did not assign any restrictions or limitations in support of Cannon's claim that he was unable to perform his own occupation.  See D. 22 at CF 1350, 1321–27.  Furthermore, the records indicate that Cannon's atrial fibrillation was acute, having onset within one week, D. 22 at CF 1347.  Accordingly, on the present record presented to the treating physicians (which did not include the additional records that Dr. Weinstein identified in her reports), this Court cannot say at this juncture that Aetna's grant of short-term disability benefits for only the four days that Cannon was hospitalized was arbitrary and capricious.  That is, although it appears that

there is substantial evidence to support Aetna's decision,  the records identified by Dr. Weinstein

in her February 7, 2011 report, must be supplied and considered to ensure that Cannon receives a

full and fair review for the reasons discussed above.  Downey, 2012 WL 787372, at *12.

> 2.    *Procedural Violations*

Cannon argues that Aetna's decision to terminate his short-term disability benefits was

procedurally flawed and accordingly, an abuse of discretion under ERISA.  Specifically, Cannon

claims that Aetna erred by:  (a) incorrectly defining disability in the October 6, 2010 letter

terminating Cannon's benefits; and (b) failing to perform an adequate vocational review of

Cannon's occupation as a pharmacist.

> a)    Definition of Disability

Cannon claims that Aetna's incorrect definition of disability in the October 6, 2010 letter

terminating benefits was a procedural violation that requires this Court to remand Cannon's case

for a new assessment by Aetna.[8]  D. 40 at 9.  Specifically, Cannon argues that Aetna's failure to

assess Cannon's claim under the correct definition of disability negatively affected the claim

decision.  The discrepancy occurred in the initial claim determination letter; Cannon does not

---

[8] Under the terms of the Plan, an individual is deemed to be disabled if "[he is] not able, solely because of disease or injury, to perform the material duties of [his] own occupation."  D. 34 at TDI BKLT 4.  The plan further specifies that an individual "will not be deemed to be performing the material duties of [his] own occupation if:  [he is] performing some of the material duties of [his] own occupation; and solely due to disease or injury, [his] income is 80% or less of [his] predisability earnings."  Id.

The October 6, 2010 letter defined disability as:

> You are disabled from your own occupation if, as a result of physical disease, injury, pregnancy or mental disorder:  (1) You are unable to perform with reasonable continuity the material duties of your own occupation; and (2) You suffer a loss of at least 20% in your predisability earnings when working in your own occupation.

D. 22 at CF 1651.

raise any issue regarding the definition of disability in the final determination letter which contained a definition of disability that mirrored the definition in the Plan.  D. 22 at CF 1657.

ERISA specifies that a plan shall "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant."  29 U.S.C. § 1133(1).  ERISA's interpretive regulations expand upon this to require that the notice contain "[r]eference to the specific plan provisions on which the determination is based."  29 C.F.R.  § 2560.503-1(g)(ii).   However, the First Circuit has interpreted ERISA's notice requirements as not "creat[ing] a system of strict liability for formal notice failures" and has focused any inquiry regarding notice on whether the claimant established prejudice.  Terry v. Bayer Corp., 145 F.3d 28, 39 (1st Cir. 1998); see also Bard v. Bos. Shipping Ass'n, 471 F.3d 229, 240–41 (1st Cir. 2006) (noting that the "burden [is] on the claimant to demonstrate how a plan's ERISA violations prejudiced him by affecting review of his claim"); Recupero, 118 F.3d at 840 (concluding that "allowing a claim for relief because of inadequacy of formal notice without any showing that a precisely correct form of notice would have made a difference would result in benefit claims outcomes inconsistent with ERISA aims of providing secure funding of employee benefit plans").

The Court concludes that Cannon has not met his burden to show that he was prejudiced by the definition of disability in the initial claim determination letter.  Although the claim letter's language is different from that in the Plan, the two are substantively similar.  There is no indication that inclusion of the original language from the Plan would have resulted in a different outcome or that the misstated definition in the initial claim letter prejudiced Aetna's final claim decision.

Cannon's reliance on <u>Bard</u>, in support of his assertion that this procedural irregularity calls into question the integrity of the benefits-denial decision, does not warrant a different result. In <u>Bard</u>, the procedural irregularities failed to give the plaintiff sufficient notice to support the claimant's appeal of an initial denial of benefits with appropriate medical documentation.  <u>Bard</u>, 471 F.3d at 241.  Here, at least as to the alleged error in the initial claim decision letter regarding the definition of disability, Cannon was still able to, and did, pursue an appeal of Aetna's initial determination.  Accordingly, the definition of disability given in the initial claim determination letter did not serve to prejudice Cannon.

b)      <u>Vocational Review</u>

Cannon argues that "Aetna's failure to evaluate [his] symptoms in light of the occupational demands of his own occupation as a pharmacist was arbitrary and capricious."  D. 40 at 12.  In support, Cannon contends that the Plan's definition of total disability is occupation-specific and requires "only that Mr. Cannon demonstrate an inability to perform the material and substantial duties required of a pharmacist in order to be considered disabled."  D. 40 at 11–12.

Under the Plan, an individual is disabled if the individual is "not able, solely because of disease or injury, to perform the material duties of [his] own occupation."  D. 34 at TDI BKLT 4. Own occupation is defined as "the occupation that [an individual is] routinely performing when [the] period of disability begins" and is viewed "as it is normally performed in the national economy instead of how it is performed for [the individual's] specific employer."  D. 34 at TDI BKLT 15.  An individual "will not be deemed to be performing the material duties of [his] own occupation if:  [he is] performing some of the material duties of [his] own occupation; and solely due to disease or injury, [his] income is 80% or less of [his] predisability earnings."  D. 34 at TDI BKLT 4.

Cannon was employed as a pharmacist by PharMerica. D. 22 at CF 1551. His job summary included the following responsibilities:

> [Providing] pharmaceutical services to long term care and institutionalized patients in a manner that maximizes quality and patient safety. [Participating] in and [overseeing] the dispensing of medication in accordance with federal and state regulations.

D. 22 at CF 1408. The physical requirements of the position included standing, sitting, walking and lifting. D. 22 at CF 1409. Based on the job activities, Aetna rated Cannon's occupation as having a medium physical demand level. D. 22 at CF 5.

Dr. Clark and Dr. Weinstein, Aetna's reviewing physicians, reviewed Cannon's clinical file, and conducted peer consultations with Cannon's treating physicians. Dr. Clark was provided with a copy of Cannon's job description, D. 22 at CF 1365, and the referral template that was provided to Dr. Weinstein indicated that "the claimant has a medium physical demand rated occupation as a pharmacist for PharMerica." D. 22 at CF 1321-22. Thus, both physicians were aware of the demands of Cannon's job when conducting their review and analysis. Dr. Clark's report concluded that "[b]ased on the provided documentation and telephonic consultation, impairment conclusion fails to support a functional impairment for the entire time frame." D. 22 at CF 1367. Dr. Weinstein opined that "[t]here is no documentation of specific musculoskeletal or neurologic examination abnormalities and there is no indication that the claimant would be unable to perform any physical demand level of work including his own medium occupation during the timeframe in question other than the dates of hospitalization from 12/17/10 through 12/20/10." D. 22 at CF 1326. Neither physician was able to find objective evidence of the need for any restrictions or limitations on Cannon's medium occupation. D. 22 at CF 1326–27, 1367. Furthermore, Cannon's treating physicians did not indicate the need for continuing work restrictions. See D. 22 at CF 1326. Given the lack of impairment or restrictions

on Cannon's ability to work based upon the record before the reviewing physicians, there was no need for a vocational review.  That is, the record did not demonstrate that Cannon would be unable to perform any physical level of work; therefore Cannon certainly would be able to perform the material duties of his own occupation.  Id.

Accordingly, Aetna's failure to conduct a vocational review does not establish that Defendants' actions were arbitrary and capricious with respect to the final claim determination.

## IV.    Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is DENIED and Cannon's motion is ALLOWED in part to the extent that the Court orders remand.  This case shall be REMANDED to Aetna to allow the independent, reviewing physicians, including Dr. Weinstein, to update their reports after the record is supplemented with the additional medical records identified in Dr. Weinstein's February 7, 2011 report, including records from Cannon's primary care physician, Dr. Chiang.

**So ordered.**

/s/ Denise J. Casper
United States District Judge